UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------x
                                                :
UNITED STATES OF AMERICA,                       :
                                                :
                                                :
        – against –                             :        09-CR-881-1(TPG)
                                                :
VANCE MOORE II,                                 :        **OPINION & ORDER**
                                                :
                Defendant.                      :
                                                :
                                                :
-----------------------------------------------x
                                                :
VANCE MOORE II,                                 :
                                                :
                Petitioner,                     :
                                                :
                                                :        12-CV-1600 (TPG)
        – against –                             :
                                                :        **OPINION & ORDER**
UNITED STATES OF AMERICA,                       :
                                                :
                Respondent.                     :
                                                :
-----------------------------------------------x

## OPINION AND ORDER

In 2011, Vance Moore II pled guilty to ten counts for his role in a Ponzi scheme involving the purported purchase and sale of hundreds of Automated Teller Machines. Pursuant to a plea agreement, Moore agreed to forfeit $50 million to the United States and also to pay restitution to his victims. Moore now brings three motions: (1) a motion to amend, vacate or correct his sentence pursuant to 28 U.S.C. § 2255; (2) a motion for reconsideration of judgment pursuant to Federal Rule of Civil

Procedure 60(b);[1] and (3) a motion for injunctive relief from seizures and forfeiture proceedings. Moore asserts two bases for these motions, ineffective assistance of counsel and improper calculation of his restitution amount. For the following reasons, Moore's motions are denied.

<u>Facts</u>

On September 9, 2009, a grand jury indicted Moore and a codefendant for their role in a Ponzi scheme. Indict. ¶ 3. The indictment alleged that defendants had solicited $80 million from investors for the purpose of purchasing Automated Teller Machines and placing them in retail locations. Indict. ¶ 3. In reality, the vast majority of the funds were not used to purchase ATMs, but to enrich the defendants at investors' expense. Indict. ¶ 3. While the scheme was ongoing, defendant paid investors monies purportedly reflecting revenue from the ATMs. Indict. ¶ 6. In fact, these payments were funded from the investments of new victims of the scheme. Indict. ¶ 6.

Moore and his codefendant were scheduled to go to trial on October 25, 2010. Apps. Decl. ¶ 3. In September of 2010, Moore's counsel indicated to the government that Moore wished to plead guilty to the charges pursuant to a cooperation agreement. App. Decl. ¶ 5. Moore, his counsel, and prosecutors held proffer sessions on October 6, 2010

---

[1] As a rule of civil procedure, Rule 60(b) does not afford relief from a criminal judgment and sentencing. Thus, the court will consider Moore's Rule 60 motion for reconsideration alongside his later filed motion for *habeas* relief. The court will not count the Rule 60 motion for purposes of 28 U.S.C. § 2255(h).

and October 13, 2010. Apps Decl. ¶ 5. At the conclusion of these sessions, the United States Attorney's Office declined to enter into a cooperation agreement. Apps. Decl. ¶ 5. Instead, on October 14, 2010, prosecutors sent Moore's attorneys a draft non-cooperation plea agreement. Apps. Decl. ¶ 6.

Moore's attorneys visited him several times in mid-October of 2010. Sign-in logs for the Metropolitan Correction Center ("MCC") show visits on October 5th, 7th, and 12th. Apps. Decl. Ex. E-2. On October 14, 2010, prosecutors emailed one of Moore's attorneys, Seth Ginsberg, a proposed plea agreement with terms accepting $80 million in restitution. Ginsberg responded by noting that this amount of restitution "seemed unreasonable" and asked if there was "some middle ground." Apps. Decl. Ex. D. Moreover, Ginsberg informed prosecutors that co-counsel, Allen Frankel, would meet with Moore that day to discuss the proposed plea agreement. Apps Decl. Ex. D.

Ginsberg was unable to visit Moore himself that day because he had been barred from visiting the MCC. Apps. Decl. ¶ 13. Newspaper accounts at the time indicated that Ginsberg had been discovered attempting to smuggle marijuana into the jail. Dkt. 8-1, Ex. A. As such, his visiting privileges were revoked until January of 2011. Apps. Decl. ¶ 12. Allen Frankel visited Moore in Ginsberg's stead. Frankel signed in at the Metropolitan Correction Center at 12:10 PM and signed out at 6:00 PM. Apps. Decl. Ex. E-1. Moore alleges that sign-in sheets for his floor

- 3 -

show that Frankel didn't meet with him until 5:45pm that day, and left fifteen minutes later to "pick up his kids" at the train station. Reb. Gov't & Req. Evid. Hr'g at 2.

Moore signed the plea agreement on October 18, 2010. Apps. Decl. Ex. F at 6. He agreed to plead guilty to ten counts with a maximum term of imprisonment of 200 years. Id. at 1. Moreover, he agreed to forfeit to the United States $50 million and to make restitution to his victims "in an amount to be specified by the court." Id. at 2. Moore agreed not to appeal or collaterally attack any restitution amount less than $50 million. Id. at 5. The guidelines range for his offenses was stipulated to be between 97 months' to 121 month's imprisonment, id. at 3, although plaintiff acknowledged that such a range was not binding on the court. Id. at 4.

The court accepted Moore's guilty plea on October 18, 2010. The court asked Moore a number of questions, including whether he was satisfied with his counsel and their advice, whether any force or threats were used to induce him to accept the agreement, and whether he was under the influence of drugs or alcohol. Tr. Oct. 18, 2010 at 2:21–3:9. Moore responded that he was satisfied with his counsel, and had not been threatened and was not under the influence of drugs or alcohol. Id. The court asked Moore, "Do you understand that the exact sentence to be imposed is up to me to decide?" to which Moore responded, "Yes, sir." Id. at 11:20–12:5. The court then described, and Moore acknowledged,

each of the rights he would waive by pleading guilty. Id. at 12–14. After additional questioning, the court accepted Moore's guilty plea.

The court held a sentencing hearing on February 28, 2011. Moore told the court "I am prepared to serve whatever sentence the Court deems appropriate to me . . . . I apologize to each and every one of [my victims]." Tr. Feb. 28, 2011 at 11:11–18. The court sentenced Moore to 97 months' imprisonment, which was at the bottom of the guidelines range. Id. at 14. The court noted that Moore's attorney had written a "very cogent and well thought out memorandum" recommending a below-guidelines sentence, but reasoned that the 97 month sentence was appropriate given the facts presented to the court and the grievous losses suffered by Moore's victims. Id. at 13–14. The court ordered the government to provide recommended restitution amounts within 90 days. Id. at 14:22.

Within 90 days of Moore's sentencing, the government submitted restitution lists for his victims. See Dkt. # 74 (under seal). The government calculated the total amount of restitution to be $58,364,489.91. See Dkt. # 73. This was ~$8 million more than the amount contemplated in Moore's appeal-waiver, but within the terms of the plea agreement, which had left the sum to the court's discretion. See App. Ex. F. at 2. On May 25, 2011, the court ordered Moore to pay restitution to his victims for the total amount calculated by the government, $58,364,489.91.

<u>Discussion</u>

Section 2255 of Title 28 of the United States code provides a means for federal prisoners to challenge their sentence. <u>See</u> 28 U.S.C. § 2255(a). On a prisoner's motion, the court may correct, vacate, or set aside a sentence if it finds "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law. . . or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Essentially, the prisoner must show an error of such magnitude that it rises to a miscarriage of justice. <u>See</u> <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962).

**A. Whether Moore's Appeal Waiver Bars Review of His Sentence.**

The government argues that Moore's § 2255 motion is barred by the broadly worded appeal waiver Moore accepted as part of his plea agreement.

A defendant who pleads guilty to a crime waives a number of rights, most significantly the right to a trial by jury. <u>See</u> U.S. Const. amend. IV. Most defendants plead guilty pursuant to a plea bargain, whereby they agree to spare the government the expense of a trial in exchange for concessions from the prosecution, often including a reduction in the number of charges asserted. <u>Missouri v. Frye</u>, 132 S. Ct. 1399, 1407 (2012). In recent years, it has become common for criminal defendants to waive another right, the right to appeal or collaterally

- 6 -

attack the sentence received. Nancy J. King & Michael E. O'Neill, *Appeal Waivers and the Future of Sentencing Policy*, 55 DUKE L.J. 209, 231 (2005).

A defendant's waiver of the right to collaterally attack his sentence is valid and enforceable if made knowingly and voluntarily. United States v. Rosa, 123 F.3d 94, 97 (2d Cir. 1997). A waiver is made knowingly if the defendant fully understood its consequences. United States v. Ready, 82 F.3d 551, 557 (2d Cir. 1996), *superseded on other grounds as stated in* United States v. Cook, 722 F.3d 477, 481 (2d Cir. 2013). In determining the scope of the appeal waiver, the court will construe the plea agreement in accordance with contract law principles. Id. However, given the significance of the defendant's interests, the court will construe the plea agreement against the government and in the defendant's favor. United States v. Katsman, 551 F. App'x 601, 603 (2d Cir. 2014). Moreover, the appeal-waiver will be particularly futile in barring review where the appeal is premised on ineffective assistance of counsel grounds, Rosa, 123 F.3d at 98, since such claims raise serious doubts about the defendant's comprehension of the plea agreement. See Ready, 82 F.3d at 557 n.3 (citing United States v. Henderson, 72 F.3d 463, 465 (5th Cir.1995)).

In the instant case, Moore accepted a broadly worded appeal waiver as part of his plea agreement. The appeal waiver reads:

> It is agreed: (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to

an application under Title 28, United States Code, Section 2255 . . . of any sentence within the Stipulated Guidelines Range of 97 to 121 months' of imprisonment . . . . The defendant also agrees not to appeal any restitution amount that is less than or equal to $50,000,000.

See Apps. Decl. Ex. F at 5.

Moore's appeal waiver is relevant for two purposes here. First, it prohibits § 2255 motions where the sentence received is between 97 months and 121 months' imprisonment. Id. Second, it prohibits appeal of restitution amounts less than $50 million. Id. This court sentenced Moore to 97 months of imprisonment, the very bottom of the guidelines range.  Tr. Feb. 28, 2011 at 11:11–18. This term of imprisonment is well within the range specified in the appeal waiver. Apps. Decl. Ex. F at 5. However, the court ordered restitution of $58 million, well in excess of the amount specified in the appeal waiver. See Order of Restitution. Thus, the appeal waiver, if enforced, would preclude all aspects of Moore's § 2255 motion relating to his sentence, but would not preclude his challenge to the order of restitution.

This court is reluctant to enforce the appeal waiver given the circumstances of this case. Six days before Moore accepted the plea agreement, one of his attorneys, Ginsberg, was barred from visiting him in jail after being caught smuggling marijuana to other inmates. Apps. Decl. ¶ 13; Dkt. 8-1, Ex. A. Moore argues that while Ginsberg was barred from the jail "no one from Mr. Ginsberg's firm came to the jail to aid in preparation of my case or plea." Mot. Vacate. at 5. This alleged

misconduct raises questions going toward Ginsberg's effectiveness in preparing Moore to accept the plea agreement. While it does not, without further inquiry, amount to fullscale ineffective assistance of counsel, it merits a decision of Moore's claims on the merits, rather than outright dismissal on waiver grounds.

B. **Moore's Ineffective Assistance of Counsel Claim.**

Moore claims that he was never given an opportunity to review his plea agreement until moments before pleading guilty, and that this rises to the level of ineffective assistance of counsel within the law on that subject.

To demonstrate ineffective assistance of counsel, a defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness under prevailing norms; and (2) he suffered prejudice as a result of defense counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). In the realm of plea bargains, defense counsel's performance is indisputably deficient if he fails to convey to the defendant a plea offer. Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). Moreover, defense counsel has a constitutional obligation to give the client advice on the "crucial question" of whether to accept or reject the plea agreement. Id. With regard to the prejudice prong of the *Strickland* test, a defendant suffers prejudice if there is a reasonable probability that his reliance on counsel's ineffective assistance affected the outcome of the proceedings. Id.

- 9 -

In the instant case, Moore argues that counsels' performance was deficient because they did not adequately explain the contents of the proposed plea agreement. However, the court finds this difficult to credit given Moore's conflicting versions of the events leading up to his plea. In his § 2255 motion filed on February 27, 2012, Moore explains that after Ginsberg's visiting privileges to the MCC were suspended "no one from Mr. Ginsberg's firm came to the jail to aid in preparation of my case or plea." Mot. Vac. At 5. However, sign-in logs for the MCC show that Frankel visited Moore on October 15, 2010. Apps. Decl. Ex. E-1. Frankel's visit is corroborated by an email from Ginsberg that day stating "Allen is going to discuss the plea agreement with Moore today." Apps. Decl. Ex. D.

Moore offered a completely different version of events after receiving the government's opposition papers to his motion. In his rebuttal papers dated May 28, 2013, Moore abandoned his accusation that "no one . . . came to the jail to aid in preparation of my case or plea" and adopted a new approach, conceding that Frankel did in fact visit him in jail, but only for fifteen minutes. Rebuttal at 2. This is not the only contradiction in his papers. In the § 2255 motion, Moore claims "I was never given an opportunity to review my plea agreement until moments before the hearing," which occurred on October 18th. Mot. Vac. at 5. However, in his rebuttal papers, Moore states that he was "handed the Plea Agreement" on October 15, 2010, Rebuttal at 1–2, giving him a full

two days to review the agreement. Given these significant discrepancies, the court finds it difficult to credit Moore's version of events.

Setting aside the discrepancies in Moore's filings with the court, Moore has not provided evidence showing that his counsel fell below an object standard of reasonableness. To be sure, Ginsberg's misconduct in smuggling marijuana into the Metropolitan Correction Center was egregious. It is both illegal and unethical to smuggle drugs into prison and Ginsberg's actions prevented him from visiting his client in the crucial days leading up to the plea hearing. Apps. Decl. ¶ 12 ("Ginsberg's legal visiting privileges fo [sic] the MCC were suspended from October 12, 1010 [sic] until January 12, 1010 [sic].").   However, Ginsberg was not Moore's only attorney. Moore was also represented by Allen Frankel. Moore has provided no evidence that Frankel's representation was inadequate.

Indeed, Moore's two attorneys provided adequate, even vigorous representation. Sign-in logs for the MCC show that Frankel visited Moore in jail on October 5th, 7th, 12th, and 15th of 2010. Apps. Decl. Exs. E-1, E-2. During this period, defense counsel pursued a cooperation agreement with the government, attended two proffer sessions with prosecutors, and successfully negotiated a reduction in Moore's restitution amount from $80 million to $50 million. See generally Apps. Decl.; and compare Draft Plea Agreement Oct. 14, 2010 at 2 with Plea

Agreement 2. Finally, on October 15, 2010, Frankel visited Moore in jail to discuss the plea agreement. Apps. Decl. Ex. E-1.

The adequacy of counsels' performance was evident at the plea hearing and at sentencing. At the plea hearing, when asked whether he was satisfied with his counsel's representation, Moore answered affirmatively. Tr. Hr'g Oct. 18, 2010 at 2:22. When it came time for sentencing, defense counsel drafted a particularly excellent pre-sentencing memorandum advocating for a below-guidelines sentence, one which the court noted at the time was "very cogent and well thought out." Tr. Feb. 28, 2011 at 13-14. And while the court did impose a within guidelines sentence, it was at the absolute bottom of the guidelines range, 97 months' imprisonment. Id. at 14.

In short, Moore has failed to provide evidence showing that counsels' performance was inadequate. Ginsberg's misconduct was egregious, but did not in any way diminish Frankel's representation, which from the record appears more than sufficient.

Even if the court were to accept, *arguendo*, that counsel's performance was deficient, there is no evidence going to the second prong of the *Strickland* test. There is no evidence of prejudice, that the outcome would have been different had Moore held out for a different plea agreement, insisted on going to trial, or requested different counsel. As discussed, prosecutors had already rejected defense counsel's attempts to procure a cooperation agreement. However, soon after the

proffer meetings, the government suggested a plea agreement with an estimated sentencing range of 97 to 121 months' imprisonment. Apps. Decl. Ex. F. If Moore had rejected the plea agreement, he would have faced trial a week later on all of the charges and faced 135 to 168 months imprisonment. Instead, Moore received the lowest sentence in the sentencing guidelines, 97 months.

There is no evidence in the record suggesting that Moore wished to proceed to trial rather than simply hold out for the best possible plea agreement. Of course, if Moore had insisted on going to trial a jury may have returned a verdict in his favor. But the same is true of every criminal defendant who accepts a plea agreement. Thus, even if the court were to credit Moore's claim that Frankel's visit on October 15, 2010 was too brief, there is nothing in the record to suggest a longer visit would have changed the outcome of the case. Rather, the record indicates that Moore would have gone on to accept a plea agreement in any event. Since he received the lowest guideline sentence, he suffered no prejudice and thus fails to satisfy the second prong of the *Strickland* test.

C. **Whether the Government Appropriately Calculated the Restitution Amount.**

Moore challenges the order of restitution in this case, arguing that the government did not prove the amount of loss suffered by each victim. As such, Moore "object[s] to the inclusion of any restitution amount." Rule 60(b) Mot. at 2.

The Mandatory Victims Restitution Act of 1996 requires defendants convicted of certain crimes, including financial crimes, to make restitution to their victims. <u>See</u> 18 U.S.C. § 366A(a)(c)(1)(ii); <u>United States v. Boccagna</u>, 450 F.3d 107, 112 (2d Cir. 2006). The MVRA directs the court to "impose restitution in 'the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.'" <u>United States v. Catoggio</u>, 326 F.3d 323, 326 (2d Cir. 2003) (citing 18 U.S.C. § 3664(f)(1)(A)). In determining the amount of restitution, the court:

> [S]hall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant. If the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court.

18 U.S.C. § 3664(a). The MVRA provides a maximum of 90 days after sentencing for the court to affix restitution. 18 U.S.C. § 3664(d)(5). The burden of proof in showing the losses sustained by the victims is on the government, and must be established by a preponderance of the evidence. 18 U.S.C. § 3664(e).

In the instant case, Moore's plea agreement provided that Moore would make restitution to his victims in "an amount to be specified by the court." Apps. Decl. Ex. F. at 2. The court sentenced Moore on

- 14 -

February 28, 2011. <u>See</u> Judgment at 1. However, the court deferred affixing restitution for a period of 90 days. Tr. Hr'g Feb. 28, 2011 at 22. On May 25, 2011, within the 90 day period, the court entered an order of restitution, having received from the government a Schedule of Victims showing each victim's losses. Dkts. 73, 74. The Schedule of Victims, filed under seal, is in the form of an Excel spreadsheet providing the names and addresses of Moore's victims. Dkt. 74 (under seal). Next to the victims' names is a column labeled "Net". <u>Id.</u> In the "Net" column are dollar amounts showing losses for each victim, totaling $58,364,489.91. <u>Id.</u>

Moore argues that the government miscalculated the amount owed to each victim by undervaluing the amount he had already repaid them. He supports this assertion with excerpts from an affidavit from a civil proceeding showing that ATM Financial Services was reimbursed the vast majority of the monies it gave to the conspirators. <u>See</u> Reb. & Req. Evid. Hr'g, 3; Ex. 8-3. He also claims that the exhibit demonstrates that the number of ATMs actually owned by the conspirators was actually greater than what the government represented to the court.

Moore's argument is without merit. The Schedule of Victims names fourteen persons as victims. Dkt. 74. None of these victims is the same entity referred to in Moore's exhibit. <u>Compare</u> Schedule of Victims <u>with</u> Reb. & Req. Evid. Hr'g Ex. B. Moreover, the Schedule of Victims, by containing a column labeled "Net," clearly indicates that the government

had included in its calculation monies already received by those victims. Dkt. 74. The court need not rest on this inference however, as the government has provided the full spreadsheet, showing the amount of funds "incoming" to the victims and the amount they paid out to the conspirators. <u>See</u> Gov't Mem. L. Opp. Rule 60(b) Mot. Ex. C. Thus, the government clearly considered and included the amounts already paid to the victims in calculating Moore's restitution amount.

In ordering restitution in May of 2011, the court was satisfied that the government had proven the victim's losses by a preponderance of the evidence. Upon review, and having considered the documentary evidence provided by both sides, the court remains satisfied that the amount of restitution ordered was the correct amount.

Conclusion

For the reasons given above, Moore's motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255 is denied. His two other motions, a "motion for reconsideration of judgment pursuant to Federal Rule of Civil Procedure 60(b)" and "a motion for injunctive relief from seizures and forfeiture proceedings" are also denied.

This opinion and order resolves the items listed as document number 5 in civil case 12-CV-01600; and document numbers 79, 82, 84, and 86 in criminal case 09-CR-00881.

SO ORDERED.

Dated:  New York, New York
        May 29, 2015

                            Thomas P. Griesa
                            U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/29/15

- 17 -